Hon. Kenneth J. Connolly Deputy Commissioner Division of Criminal Justice Services Executive Park Tower Stuyvesant Plaza Albany, New York 12203-3764
Dear Mr. Connolly:
You have requested a formal opinion as to whether individuals convicted of either felonies or misdemeanor crimes of domestic violence may be appointed as peace officers. You have asked that we consider whether their convictions preclude such appointment by virtue of the provisions of the federal Gun Control Act (GCA), 18 U.S.C. § 921, et seq. The Division of Criminal Justice Services certifies peace officers upon successful completion of the training required by law. Criminal Procedure Law §2.30.
The only State statutory requirements for appointment as a peace officer are that an individual be a United States citizen, a State resident, and possess the right to vote. Public Officers Law § 3-b. A felon under sentence would be disqualified from appointment because he/she does not possess the right to vote. Election Law § 5-106(2). Accordingly, the question narrows to whether an individual convicted of a felony, who has completed his/her sentence, or an individual convicted of a misdemeanor crime of domestic violence, may possess a firearm.
We will first consider whether a felon may possess a firearm under the federal GCA. We will then consider whether a person convicted of a misdemeanor crime of domestic violence may possess a firearm under that federal Act. Finally, we will discuss the discretion of appointing authorities regarding the appointment of peace officers.
I. THE POSSESSION OF FIREARMS BY STATE FELONS UNDER THE FEDERAL GUNCONTROL ACT
The GCA[1] provides, in pertinent part, as follows:
It shall be unlawful for any person . . . who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. 18 USCA § 922(g).
However, "[t]he provisions of this chapter . . . shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof." 18 U.S.C.A § 925(a)(1).
In New York, Criminal Procedure Law § 2.10 provides an exclusive list of persons designated as "peace officers." Many of the peace officers on this list are employed by the State and local governments and, therefore, the firearms they are issued by their employers would be "for the use of . . . the State or any department, agency or political subdivision thereof," thus falling within the statutory exception.18 U.S.C.A § 925(a)(1). Accordingly, these peace officers come within the exception from the federal prohibitions on possessing a firearm.See, Hyland v. Fukuda, 580 F.2d 977, 979 (9th Cir 1978); United Statesv. Kozerski, 518 F. Supp. 1082, 1090-91 (DNH 1981), affd, 740 F.2d 952 (1st Cir), cert denied, 469 U.S. 842 (1984).
Other peace officers are employed privately and, therefore, are not covered by the governmental employment exception contained in the GCA. For this class of peace officer, we must determine whether, in its reference to crimes punishable by imprisonment for a term exceeding one year, the GCA applies to individuals convicted of felonies.
As a preliminary matter, under the GCA persons convicted of a covered crime are only prohibited from shipping, transporting, possessing, or receiving firearms or ammunition that have been shipped or transported "in interstate or foreign commerce" or possessed "in or affecting commerce." 18 U.S.C.A § 922(g). In Scarborough v. United States,431 U.S. 563 (1977), the Supreme Court of the United States held that proof that the possessed firearm previously traveled in interstate commerce was sufficient to satisfy the statutorily required nexus between the possession of the firearm by the convicted felon and interstate commerce. The Court found "no indication that Congress intended to require any more than the minimal nexus that the firearm have [sic] been, at some time, in interstate commerce." Scarborough,431 U.S. at 575. Based on Scarborough, courts have held that manufacture of firearms or ammunition outside of the state or previous travel in interstate commerce is sufficient to satisfy the commerce requirement. See, UnitedStates v. Sanders, 35 F.3d 61 (2d Cir), cert denied, 513 U.S. 994
(1994); United States v. Carter, 981 F.2d 645 (2d Cir 1992), certdenied, 507 U.S. 1023 (1993); United States v. Ray, 41 F.3d 1504 (4th Cir 1994).
Whether an individual with a conviction falls within the prohibitions of the GCA depends upon the "law of the jurisdiction in which the proceedings were held." 18 U.S.C.A § 921(20). Therefore, we should look to the law of the jurisdiction in which the conviction occurred for guidance regarding the designation of crimes with terms of imprisonment exceeding one year. For purposes of this opinion, we will limit our analysis to persons convicted under New York law.[2]
Under New York law a felony is defined as "an offense for which a sentence to a term of imprisonment in excess of one year may be imposed." Penal Law § 10.00(5). Thus, as a general matter, under the GCA a New York felon may not possess a firearm if the required nexus to interstate commerce is present.[3]
However, under the GCA, "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess or receive firearms." 18 U.S.C.A § 921(20). Under this statute, the "civil rights restored" must include at least the right to vote, to hold public office, and to serve as a juror. See, McGrath v. United States,60 F.3d 1005, 1007 (2d Cir 1995), cert denied, 516 U.S. 1121 (1996). These have been described as the core civil rights for purposes of the GCA. Id. Additionally, for the exception to apply, the person must not be prohibited under any State statutory provision from shipping, transporting, possessing or receiving firearms.18 U.S.C.A § 921(20).
A. The Core Civil Rights
In New York, an individual convicted of a felony, who has been sentenced to imprisonment in a State correctional facility for a term less than for life or for an indeterminate term having a minimum of one day and a maximum of natural life, forfeits all of his/her civil rights, including, inter alia, the right to vote, to hold public office, and to serve as a juror. Civil Rights Law § 79.
The right to vote and to hold public office are automatically restored to New York felons upon the completion of their sentences, including all parole. Election Law § 5-106(2); Civil Rights Law § 79. Such automatic restoration is sufficient to constitute a restoration of these rights within the meaning of the GCA. See, McGrath v. UnitedStates, supra, at 1008. However, New York felons are statutorily prohibited from serving as jurors. Judiciary Law § 510. This statutory bar may be removed by obtaining a Certificate of Relief from Disabilities issued pursuant to Correction Law § 701. See, 1991 Op Atty Gen 10 ("In our view, the language defining the relief granted by these certificates is sufficiently broad to include the right of a felon to serve as a juror . . ."). "A certificate of relief from disabilities may be granted as provided in this article to relieve an eligible offender[4] of any forfeiture or disability, or remove any bar to his employment, automatically imposed by law by reason of his conviction of the crime or offense specified therein." Correction Law § 701. A Certificate of Relief from Disabilities, removing the statutory bar to serve as a juror, is sufficient to restore that right within the meaning of the GCA. See, McGrath v. United States, supra, at 1008.
Accordingly, under the GCA, a State felon whose conviction has been expunged or set aside, or who has been pardoned or has had his/her civil rights restored, including the right to serve as a juror pursuant to a Certificate of Relief from Disabilities, may possess a firearm under the GCA, absent any State prohibition preventing the possession of firearms.
B. Firearms Licenses Under State Law
Under the GCA, a felon may not possess a firearm if he/she is prohibited, under any State statutory provision, from shipping, transporting, possessing or receiving firearms.18 U.S.C.A § 921(20).
Some peace officers are authorized to possess firearms by virtue of their peace officer status. Penal Law § 265.20(a)(1)(c); Criminal Procedure Law § 2.10. However, others must obtain firearms licenses under Penal Law § 400.00 prior to possessing, repairing or disposing of firearms. Criminal Procedure Law § 2.10.
Penal Law § 400.00 governs the licensing of firearms in New York. Under Penal Law § 400.00, individuals convicted "anywhere of a felony" may not be issued a firearms license. Under decisional law, this disability may be removed if an individual obtains a Certificate of Relief from Disabilities pursuant to Correction Law § 701. See, Hinesv. Kelly, 222 A.D.2d 277, 278 (1st Dept 1995) (Certificate of Relief from Disabilities sufficient to remove automatic bar to licensure), lvdenied, 87 N.Y.2d 810 (1996); People v. Flook, 164 Misc.2d 284, 285 (NY County Ct 1995); 1975 Op Atty Gen 306; 1971 Op Atty Gen 8. But see,Matter of Alarie, 168 Misc.2d 329, 330 (NY County Ct 1996) (declining to follow dicta in People v. Flook, supra, that a Certificate of Relief from Disabilities may remove the statutory bar to apply for or receive a firearms license).
Although a Certificate of Relief from Disabilities might remove an absolute statutory bar to licensure, the licensing officer is still vested with broad discretion to deny a felon a firearms license. A Certificate of Relief from Disabilities does not prevent "any judicial, administrative, licensing or other body, board or authority from relying upon the conviction specified therein as the basis for the exercise of its discretionary power to suspend, revoke, refuse to issue or refuse to renew any license, permit or other authority or privilege." Correction Law § 701(3) (emphasis added). See, Hines v. Kelly, supra, at 278 (although Certificate of Relief from Disabilities might remove the automatic bar to licensure, it did not "prevent respondent from relying on the convictions in the exercise of his statutory discretion to deny a license for `lack of good moral character' or `good cause'"). Therefore, under both the GCA and State law, a State felon may be appointed as a peace officer, where such appointment requires the issuance of a firearms license, if he/she is issued a Certificate of Relief from Disabilities and the licensing officer grants a firearms license under Penal Law § 400.00.
II. THE POSSESSION OF FIREARMS BY PERSONS CONVICTED OF
MISDEMEANOR CRIMES OF DOMESTIC VIOLENCE UNDER THE FEDERAL GUN CONTROLACT
The 1996 amendments to the GCA (the "domestic violence amendments") provide, in pertinent part, as follows:
It shall be unlawful for any person —
. . .
(9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.18 U.S.C.A § 922(g)(9).
A "misdemeanor crime of domestic violence" means an offense that:
(A) . . . (i) is a misdemeanor under Federal or State law; and
(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.
. . .
(B) . . . (ii) A person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense) unless the pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms. 18 U.S.C.A § 921(a)(33).
As stated above, the GCA, including the domestic violence amendments, applies only to firearms or ammunition that have been shipped or transported "in interstate or foreign commerce" or possessed "in or affecting commerce." 18 U.S.C.A § 922(g).
The domestic violence amendments do not contain the exception for those engaged in governmental employment as discussed above with respect to crimes punishable for a term in prison of more than one year. The statutory language regarding the issuance of firearms for the use of the "United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof" is not made applicable to convictions of misdemeanor crimes of domestic violence.18 U.S.C.A § 925(a)(1).
However, the domestic violence amendments do exempt persons convicted of misdemeanor crimes of domestic violence who have had their civil rights restored from the provisions of the GCA. Under the statute, whether a person's civil rights can be "restored" depends upon whether the person ever lost any civil rights as a result of the subject conviction. This seems clear from the parenthetical language "(if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)." 18 USCA § 921(a)(33). For this purpose, federal courts consider the core civil rights to be the right to vote, to serve on a jury, and to hold public office. See, McGrath v. United States, supra, at 1007.
The question is whether State law "provides for the loss of civil rights under such an offense." 18 U.S.C.A § 921(a)(33). For purposes of this opinion, we will limit our analysis to persons convicted under New York law.[5] Under New York law, a person convicted of a misdemeanor does not forfeit these core civil rights.[6] See, Civil Rights Law §79; Public Officers Law § 30; People v.Ahearn, 196 N.Y. 221, 232 (1909).
In McGrath v. United States, the United States Court of Appeals for the Second Circuit held that a state's failure to divest felons of their civil rights does not qualify as a "restoration" under the federal statute. McGrath v. United States, supra, at 1008. In McGrath, the court was interpreting a similar provision of the GCA,18 U.S.C.A § 921(a)(20), which provides, in pertinent part:
Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.
Although the court was sympathetic to the potential for injustice created by the restoration language, it noted that "the role of the court is to give effect to the legislation Congress has passed, not to legislation it might pass, if it further studied the question." McGrath v. UnitedStates, supra, at 1009.[7]
The domestic violence amendments, including the parenthetical language within the exemption provisions of these amendments, were enacted subsequent to McGrath. Therefore, a logical inference can be made that Congress, upon further study of the question, intended to make it clear that persons convicted of misdemeanor crimes of domestic violence would not have their civil rights "restored" if they had never been lost, by inserting the parenthetical language in 18 U.S.C.A § 921(a)(33), providing that a
person shall not be considered to have been convicted of such an offense for purposes of this chapter if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction providesfor the loss of civil rights under such an offense).18 U.S.C.A § 921(a)(33) (emphasis added).
Moreover, the legislative history of these amendments states that because the
[l]oss of these [core civil] rights generally does not flow from a misdemeanor conviction, . . . [the] language [on civil rights restoration] is probably irrelevant to most, if not all, of those offenders covered . . . [by] the new ban. 142 Cong Rec S11877-78 (September 30, 1996) (statement of Sen. McCain).
In further support of this proposition, in UnitedStates v. Smith, No. CR 96-2140 (N.D.Iowa July 14, 1997), the United States District Court for the Northern District of Iowa recently held that:
[s]ection 921(a)(33)(B)(ii) specifically provides that the restoration of civil rights exception applies only where the "applicable jurisdiction provides for the loss of civil rights under such an offense". Thus, where a defendant's civil rights are not affected by the conviction . . . the defendant cannot have his civil rights restored for purposes of section 921(a)(33)(B)(ii).
See also, National Association of Government Employees, Inc. v. Barrett,968 F. Supp. 1564, 1575 (N.D. Ga 1997) ("the fact that states' laws differ, with some failing to divest a misdemeanant of his or her civil rights such that they cannot be restored, does not render . . . [the domestic violence amendments] unconstitutional").
We note that an individual convicted of a misdemeanor crime of domestic violence may apply to the Secretary of the Treasury for relief from the disabilities imposed by the GCA. Such relief may be granted if it is satisfactorily established "that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 18 USCA § 925(c).[8]
Therefore, a person convicted in New York of a misdemeanor crime of domestic violence may not be issued a firearm under the GCA unless the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or unless the person has received, upon an application to the Secretary of the Treasury, relief from federal firearms disabilities.
III. DISCRETION OF APPOINTING AUTHORITIES
Although certain persons convicted of either State felonies or misdemeanor crimes of domestic violence may be issued firearms, the appointing authority can still use its discretion in appointing peace officers and may take into account an applicant's prior convictions. Civil Service Law § 50(4)(d); Matter of Golimowski v. Bellamy, ___ A.D.2d ___, 668 N.Y.S.2d 968(4th Dept 1997);Matter of Frederick v. CivilService Commission, 175 A.D.2d 428 (3d Dept 1991). However, the appointing authority may not deny an application for employment solely
by reason of the applicant's having been previously convicted of one or more criminal offenses, or by reason of finding of lack of "good moral character" when such finding is based upon the fact that the applicant has previously been convicted of one or more criminal offenses, unless:
(1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought; or
(2) the issuance of the license or the granting of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public. Correction Law § 752.
Therefore, State, local governments and other employers of peace officers may exercise some discretion in making employment decisions regarding persons convicted of criminal offenses.
Very truly yours,
DENNIS C. VACCO
Attorney General
[1] The provisions of the Omnibus Crime Control and Safe Streets Act of 1968 (Public Law 90-351, Title VII §§ 1201-1203) cited in your inquiry were repealed in 1986. The provisions have been subsumed within the Gun Control Act, 18 U.S.C. § 921, et seq.
[2] Appointing authorities in New York must analyze the applicability of the GCA to persons convicted in other jurisdictions, looking to the law of those jurisdictions for guidance.
[3] We note that under the GCA the "term `crime punishable by imprisonment for a term exceeding one year' does not include
. . . (A) any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or (B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less."18 U.S.C.A § 921(20).
[4] An "eligible offender" is "a person who has been convicted of a crime or an offense, but who has not been convicted more than once of a felony." Correction Law § 700(1)(a).
[5] Appointing authorities in New York must analyze the applicability of the GCA to persons convicted of misdemeanor crimes of domestic violence in other jurisdictions, looking to the law of those jurisdictions for guidance.
[6] We note that pursuant to Public Officers Law § 30, a public officer convicted of a misdemeanor which violates the officer's oath of office will forfeit that public office. See, e.g., Matter ofDuffy v. Ward, 81 N.Y.2d 127 (1993). Under the Correction Law, a Certificate of Relief from Disabilities cannot restore a public office. Correction Law § 701(1).
[7] Other courts have held that a person's civil rights are deemed "restored" for purposes of the federal statute, even if they were never taken away. See, United States v. Indelicato, 97 F.3d 627 (1st Cir 1996), cert denied, ___ US ___, 117 S.Ct. 1013 (1997); United States v.Cassidy, 899 F.2d 543, 549 n13 (6th Cir 1990). It should be noted, however, that these courts were not analyzing the "restoration" language in the domestic violence amendments. Additionally, one court has suggested that "[s]uch an interpretation would . . . be nonsensical in the context of [the domestic violence amendments] for it would have the effect of prohibiting very few domestic violence misdemeanants from possessing a firearm." National Association of Government Employees, Inc.v. Barrett, 968 F. Supp. 1564, 1575 n15 (N.D. Ga 1997).
[8] We note that Congress is not currently appropriating funds for the investigation and review of individual requests for relief from federal firearms disabilities under 18 U.S.C.A § 925(c). Pub L 105-61
(111 Stat 1277).