CASES v. UNITED STATES.
No. 3756.

Circuit Court of Appeals, First Circuit.

Nov. 27, 1942.

918

Hugh R. Francis, Edgar S. Belaval, and Francis & Belaval, all of San Juan, P. R., for appellant.

Philip F. Herrick, U. S. Atty., Adolfo Valdés, Asst. U. S. Atty., and Francisco Ponsa Feliú, Asst. U. S. Atty., all of San Juan, P. R., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for Puerto Rico sentencing the defendant to a term of imprisonment after he had been found guilty by a jury on all four counts of an indictment charging him with violating § 2(e) and (f) [1] of the Federal Firearms Act, 52 Stat. 1250, 15 U.S.C.A. § 901–909, by transporting and receiving a firearm and ammunition. The grounds upon which the defendant bases his appeal are that the statute under which he was indicted is unconstitutional, that the verdict of guilty was contrary to the law and the facts, and that he was denied due process of law by certain rulings of the district court on matters of procedure.

The defendant contends that the Federal Firearms Act is unconstitutional because (a) it is an ex post facto law; (b) it violates the Second Amendment by infringing the right of the people to keep and bear arms; (c) it is an undue extension of the commerce clause; (d) it creates an unreasonable presumption of guilt; and (e) it denies equal protection of the laws. In our view none of these contentions are sound, but before considering them we must determine the limits imposed by the Constitution upon the power of Congress to legislate for Puerto Rico.

Although Puerto Rico is a completely organized territory it is not a ter-

---

[1] "(e) It shall be unlawful for any person who is under indictment or who has been convicted of a crime of violence or who is a fugutive* [fugitive] from justice to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition.

"(f) It shall be unlawful for any person who has been convicted of a crime of violence or is a fugutive* [fugitive] from justice to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, and the possession of a firearm or ammunition by any such person shall be presumptive evidence that such firearm or ammunition was shipped or transported ed or received, as the case may be, by such person in violation of this chapter.

* So in original.

ritory incorporated into the United States. People of Puerto Rico v. Shell Co., 302 U.S. 253, 257, 258, 259, 58 S.Ct. 167, 82 L.Ed. 235, and cases cited. As such a territory Congress has full power to make "all needful Rules and Regulations respecting [it]" (Constitution Article IV § 3) subject only "to such constitutional restrictions upon the powers of that body as are applicable to the situation." Dorr v. United States, 195 U.S. 138, 143, 24 S.Ct. 808, 810, 49 L.Ed. 128, 1 Ann.Cas. 697. See, also, Balzac v. Puerto Rico, 258 U.S. 298, 42 S. Ct. 343, 66 L.Ed. 627. The constitutional restriction on the power of Congress to pass ex post facto laws, (Article I, § 9) has been said, we think correctly, to be applicable generally to the power of Congress to legislate for territories (Scott v. Sandford, 19 How. 393, 614, 5 L.Ed. 691; Dorr v. United States, supra, 195 U.S. 142, 24 S. Ct. 808, 49 L.Ed. 128, 1 Ann.Cas. 697), and we think the restriction imposed upon Congress by the due process clause of the Fifth Amendment is "applicable to the situation" of Puerto Rico at the present time. The applicability of the restriction imposed by the Second Amendment upon the power of Congress to legislate for Puerto Rico, or for that matter for any territory, raises, questions of no little complexity. However, we do not feel called upon to consider them because we take the view that the Federal Firearms Act does not unconstitutionally infringe the appellant's right, if any one in a territory has any right at all, to keep and bear arms. We shall proceed, therefore, to consider the constitutional questions presented in the order enumerated above.

■ The Federal Firearms Act is prospective only. That is, under it no one in the class described may be convicted for having transported or received either a firearm or ammunition at any time prior to its passage. In the ordinary sense, then, it is not an ex post facto law. But the appellant contends that it is an ex post facto law as applied to him because it imposes upon him an additional penalty for a crime which he committed and for which he was convicted before the Act was passed.[2] The cases upon which he relies are Cummings v. Missouri, 4 Wall. 277, 18 L.Ed. 356; Ex Parte Garland, 4 Wall. 333, 377, 18 L.Ed.

366, and Pierce v. Carskadon, 16 Wall. 234, 21 L.Ed. 276.

The Supreme Court in Cummings v. Missouri and in Pierce v. Carskadon struck down as ex post facto laws and therefore unconstitutional under Article I § 10, provisions of a state constitution and of a state statute, respectively, requiring the taking of a test oath containing affirmations of past loyalty to the United States in acts and deeds, and even loyalty in words, desires and sympathies, in the first case as a prerequisite to pursuing certain professions and avocations, and in the second case as a prerequisite to filing a motion for a rehearing in a judicial proceeding of a specified type. In Ex Parte Garland the Supreme Court struck down as an ex post facto law, and therefore unconstitutional under Article I § 9, an act of Congress requiring the taking of a similar but less far reaching oath as a prerequisite to admission to practice before the Supreme Court of the United States. At first glance these cases may seem to support the contention of the appellant, but an examination of the opinions shows that they do not. In these cases the Supreme Court held the legislation invalid because it concluded that the test prescribed was not a test of fitness to practice the professions or avocations in question or to file a motion in court, and so that the legislation, in effect, imposed either an added punishment for a past crime or a punishment for a past act which was not punishable under the law as it stood when the act was done. In the dissenting opinions in these cases it is cogently argued that the statutes under consideration were not ex post facto laws at all, but we need not enter that controversy because even under the rule established by the court in those cases, as it was later developed, we do not think that the Federal Firearms Act is ex post facto.

In Dent v. West Virginia, 129 U.S. 114, 128, 9 S.Ct. 231, 235, 32 L.Ed. 623, cited and quoted with approval in Hawker v. New York, 170 U.S. 189, 198, 18 S.Ct. 573, 42 L.Ed. 1002, the Supreme Court, after noting that the doctrine of Cummings v. Missouri had been affirmed in Pierce v. Carskadon, said with reference to the Cummings and Garland cases "They only determine that one who is in the enjoyment of a right

---

[2] He was convicted in 1922 in a Puerto Rican court of competent jurisdiction of the crime of aggravated assault and battery under a Law of Puerto Rico approved March 10, 1904, repealing Penal Code of Puerto Rico, § 237. The Federal Firearms Act was passed in 1938.

to preach and teach the Christian religion as a priest of a regular church, and one who has been admitted to practice the profession of the law, cannot be deprived of the right to continue in the exercise of their respective professions by the exaction from them of an oath as to their past conduct, respecting matters which have no connection with such professions". The court then went on to say: "The constitution of Missouri and the act of congress in question in those cases were designed to deprive parties of their right to continue in their professions for past acts, or past expressions of desires and sympathies, many of which had no bearing upon their fitness to continue in their professions."

In Hawker v. New York, supra, a case in which the Supreme Court upheld as valid a statute of New York which prevented one who had been convicted of a felony from thereafter practicing medicine, even though the conviction ante-dated the passage of the statute, the test is indicated by which the validity of a statute of the sort under consideration may be determined. In this case the court clearly indicates that the test is not the form in which the legislation is cast, but its substance, and that if, regardless of form, the statute in substance inflicts an additional punishment for a past offense, it is bad as an ex post facto law. But, on the other hand, this case establishes that if the statute is a bona fide regulation of conduct which the legislature has power to regulate, it is not bad as an ex post facto law even though the right to engage in the conduct is made to depend upon past behaviour, even behaviour before the passage of the regulatory act. This case also establishes that conviction of a crime may be made the conclusive test of past behaviour.

Thus if the past conduct which is made the test of the right to engage in some activity in the future is not the kind of conduct which indicates unfitness to participate in the activity, it will be assumed, as it must be, that the purpose of the statute is to impose an additional penalty for the past conduct. If, however, the past conduct can reasonably be said to indicate unfitness to engage in the future activity the assumption will be otherwise. So, in conformity with this principle, the cases cited above establish that a state cannot make past loyalty to the United States extending to words, desires and sympathies a

test of fitness to teach, preach, practice law, or file a motion in court, and Congress cannot make such loyalty the test of fitness to practice before the Supreme Court of the United States. The constitutional provisions which prevent the passage of ex post facto laws by either a state or the federal government bar the way. But, on the other hand, a state can make conviction for a felony a test of fitness to practice medicine.

By the test indicated the Federal Firearms Act is clearly not an ex post facto law invalid under Article I, § 9, of the Constitution. Looking at the Act as a whole it is abundantly plain that in enacting it Congress was in no way interested in imposing an additional penalty upon those who at some time in the past had been convicted of a crime of violence. In the Act Congress sought to protect the public by preventing the transportation and possession of firearms and ammunition by those who, by their past conduct, had demonstrated their unfitness to be entrusted with such dangerous instrumentalities, and certainly no one can seriously contend that the test of unfitness which Congress established is irrelevant to this purpose. Surely it is reasonable to conclude that one who has been convicted of a crime of violence is the kind of a person who cannot safely be trusted to possess and transport arms and ammunition, and the fact that he may have reformed or that in some cases the test may operate harshly, does not invalidate the test. Hawker v. New York, 170 U.S. 189, 197, 18 S. Ct. 573, 42 L.Ed. 1002. See, also, McDonald v. Massachusetts, 180 U.S. 311, 21 S. Ct. 389, 45 L.Ed. 542.

The Federal Firearms Act undoubtedly curtails to some extent the right of individuals to keep and bear arms but it does not follow from this as a necessary consequence that it is bad under the Second Amendment which reads "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

The right to keep and bear arms is not a right conferred upon the people by the federal constitution. Whatever rights in this respect the people may have depend upon local legislation; the only function of the Second Amendment being to prevent the federal government and the federal government only from infringing that right.

922

United States v. Cruikshank, 92 U.S. 542, 553, 23 L.Ed. 588; Presser v. Illinois, 116 U.S. 252, 265, 6 S.Ct. 580, 29 L.Ed. 615. But the Supreme Court in a dictum in Robertson v. Baldwin, 165 U.S. 275, 282, 17 S. Ct. 326, 41 L.Ed. 715, indicated that the limitation imposed upon the federal government by the Second Amendment was not absolute and this dictum received the sanction of the court in the recent case of United States v. Miller, 307 U.S. 174, 182, 59 S. Ct. 816, 83 L.Ed. 1206.

In the case last cited the Supreme Court, after discussing the history of militia organizations in the United States, upheld the validity under the Second Amendment of the National Firearms Act of June 26, 1934, 48 Stat. 1236, in so far as it imposed limitations upon the use of a shotgun having a barrel less than eighteen inches long. It stated the reason for its result on page 178 of the opinion in 307 U.S., on page 818 of 59 S.Ct., 83 L.Ed. 1206, as follows: "In the absence of any evidence tending to show that possession or use of a 'shotgun having a barrel of less than eighteen inches in length' at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense."

Apparently, then, under the Second Amendment, the federal government can limit the keeping and bearing of arms by a single individual as well as by a group of individuals, but it cannot prohibit the possession or use of any weapon which has any reasonable relationship to the preservation or efficiency of a well regulated militia. However, we do not feel that the Supreme Court in this case was attempting to formulate a general rule applicable to all cases. The rule which it laid down was adequate to dispose of the case before it and that we think was as far as the Supreme Court intended to go. At any rate the rule of the Miller case, if intended to be comprehensive and complete would seem to be already outdated, in spite of the fact that it was formulated only three and a half years ago, because of the well known fact that in the. so called "Commando Units" some sort of military use seems to have been found for almost

any modern lethal weapon. In view of this, if the rule of the Miller case is general and complete, the result would follow that, under present day conditions, the federal government would be empowered only to regulate the possession or use of weapons such as a flintlock musket or a matchlock harquebus. But to hold that the Second Amendment limits the federal government to regulations concerning only weapons which can be classed as antiques or curiosities,—almost any other might bear some reasonable relationship to the preservation or efficiency of a well regulated militia unit of the present day,—is in effect to hold that the limitation of the Second Amendment is absolute. Another objection to the rule of the Miller case as a full and general statement is that according to it Congress would be prevented by the Second Amendment from regulating the possession or use by private persons not present or prospective members of any military unit, of distinctly military arms, such as machine guns, trench mortars, anti-tank or anti-aircraft guns, even though under the circumstances surrounding such possession or use it would be inconceivable that a private person could have any legitimate reason for having such a weapon. It seems to us unlikely that the framers of the Amendment intended any such result. Considering the many variable factors bearing upon the question it seems to us impossible to formulate any general test by which to determine the limits imposed by the Second Amendment but that each case under it, like cases under the due process clause, must be decided on its own facts and the line between what is and what is not a valid federal restriction pricked out by decided cases falling on one side or the other of the line.

■■■■ We therefore turn to the record in the case at bar. From it it appears that on or about August 27, 1941, the appellant received into his possession and carried away ten rounds of ammunition, and that on the evening of August 30 of the same year he went to Annadale's Beach Club on Isla Verde in the municipality of Carolina, Puerto Rico, equipped with a .38 caliber Colt type revolver of Spanish make which, when some one turned out the lights, he used, apparently not wholly without effect, upon another patron of the place who in some way seems to have incurred his displeasure. While the weapon may be capable of military use, or while at least

familiarity with it might be regarded as of value in training a person to use a comparable weapon of military type and caliber, still there is no evidence that the appellant was or ever had been a member of any military organization or that his use of the weapon under the circumstances disclosed was in preparation for a military career. In fact, the only inference possible is that the appellant at the time charged in the indictment was in possession of, transporting,[3] and using the firearm and ammunition purely and simply on a frolic of his own and without any thought or intention of contributing to the efficiency of the well regulated militia which the Second Amendment was designed to foster as necessary to the security of a free state. We are of the view that, as applied to the appellant, the Federal Firearms Act does not conflict with the Second Amendment to the Constitution of the United States.

It is clear that in enacting the Federal Firearms Act Congress was exercising the power conferred upon it by the commerce clause, but it is equally clear that Congress meant to deal comprehensively with the subject and to exert all the power which it had in respect thereto. See Atlantic Cleansers & Dyers v. United States, 286 U.S. 427, 434 et seq., 52 S.Ct. 607, 76 L.Ed. 1204; People of Puerto Rico v. Shell Co., 302 U.S. 253, 259, 58 S.Ct. 167, 82 L.Ed. 235. Since its power as we have seen, as to a territory like Puerto Rico is plenary, except as limited by express constitutional restrictions, Congress is not fettered by the commerce clause, Const. art. 1, § 8, cl. 3, in its power to legislate for Puerto Rico. See Lugo v. Suazo, 1 Cir., 59 F.2d 386, 390; and Sancho v. Bacardi Corp., 1 Cir., 109 F.2d 57, 62, 63, reversed on another point sub nom, Bacardi Corp. v. Domenech, 311 U.S. 150, 61 S.Ct. 219, 85 L.Ed. 98. As far as Puerto Rico is concerned it might, within the limits indicated, make what rules it wished with respect to the use, possession and transportation of firearms on that island, and this we think it did by the technique of definition when, in its attempt to legislate for states and territories alike it defined "interstate or foreign commerce" in § 1(2) of the Act to include commerce "within any Territory or possession or the District of Columbia." That is to say,

having much broader powers with respect to territories than it has with respect to states because as to the former it is not limited to the powers conferred by the commerce clause, and having indicated its intention to deal as broadly as it could with respect to the use, possession and transportation of firearms and ammunition in either states or territories, we conclude that Congress not only could but also did make criminal the sort of conduct in which the appellant indulged at Annadale's Beach Club. The question of whether or not Congress would have the power to regulate such conduct if it had occurred in a state is not raised. Since the appellant's argument on this constitutional question assumes that the situation presented is governed by the rules which would be applicable if his acts had been done in a state, it is beside the point and need not be considered.

We come now to the question of whether or not the Act creates an unreasonable presumption of guilt. Neither the due process clause nor the clause protecting against self incrimination absolutely prohibit legislative presumptions of fact in criminal cases. "That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law, it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate" (Mobile, J. & K. C. R. R. v. Turnipseed, 219 U.S. 35, 43, 31 S.Ct. 136, 138, 55 L.Ed. 78, 32 L.R.A.,N.S., 226, Ann.Cas.1912A, 463), and "It is consistent with all the constitutional protections of accused men to throw on them the burden of proving facts peculiarly within their knowledge and hidden from discovery by the Government". Casey v. United States, 276 U.S. 413, 418, 48 S.Ct. 373, 374, 72 L.Ed. 632. Mr. Justice Cardozo speaking for the court in a later case, (Morrison v. California, 291 U.S. 82, 88, 54 S.Ct. 281, 284, 78 L.Ed. 664), analyzed the results of earlier decisions thus: "The decisions are manifold that within limits of reason and fairness the burden of proof may be lifted from the state in criminal prosecutions and

---

[3] He not only brought the arm and ammunition with him to the club but he also pursued the victim of his spleen through a window and around the grounds before bringing him to earth with a well directed shot.

924

cast on a defendant. The limits are in substance these, that the state shall have proved enough to make it just for the defendant to be required to repel what has been proved with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression."

In view of the fact, of which we may take judicial notice, that firearms and ammunition, if manufactured at all in Puerto Rico are manufactured there in only very small quantities, and in view of the relative ease with which the appellant could and the government could not show that he had received the revolver and ammunition since the passage of the Act, it seems to us clear that the statutory presumption does not violate constitutional principles. In accord see United States v. Tot, 3 Cir., 1942, 131 F.2d 261.

The Act does not apply generally to everyone but only to those who fall within a particular class which includes, among others, those who have been convicted of a crime of violence, and a crime of violence is defined in the Act, § 1(6) as "murder, manslaughter, rape, mayhem, kidnaping, burglary, housebreaking; assault with intent to kill, commit rape, or rob; assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment for more than one year." The appellant does not contend that the Act denies due process of law because it applies only to those who fall into a defined class but he takes the position that the Act does not fall equally upon all who are embraced within the class defined because a conviction for any one of the crimes described in the Act in any state or territory brings one within the proscribed class and such crimes are differently defined in the various states and territories. Thus he argues that one who has done acts which would support a conviction for one of the crimes of violence defined in the Act in one state or territory, and who has been convicted there, would be within the class covered by the Act, whereas another who

might have done the same acts in another state or territory where such a crime was differently defined might not fall within the class covered by the Act at all.

Doubtless this is true, but Congress in making the classification was confronted with a practical problem which it solved in a practical way by listing crimes of violence and putting them, wherever committed, into a single category. It does not seem to us that there can be a sufficiently wide variety in the definition in the different states and territories of the crimes listed to make this classification unconstitutional. Practical uniformity is enough and Congress seems to us to have achieved it in the act under consideration.[4] See, also, McDonald v. Massachusetts, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542.

This concludes our discussion of constitutional questions and we pass to the question of the sufficiency of the evidence to sustain the appellant's conviction. His first contention under this head is that the government failed to show at the trial that his previous conviction was for a crime of violence as that term is defined in the Act.

It is alleged in each count of the indictment that the appellant was "convicted of a crime of violence, to wit, aggravated assault and battery, on February 13, 1922, by the District Court for the Judicial District of Aguadilla, Puerto Rico", and at the trial the government introduced in evidence a certified copy of the sentence of the above court confirming this allegation and showing that the appellant had been sentenced to one year in jail and to pay costs. The statute under which this conviction was had (Law of Puerto Rico approved March 10, 1904, now § 237 of the Penal Code) after defining and prescribing the punishment for simple assault and simple assault and battery, defines aggravated assault and battery and prescribes as the punishment therefor "a fine of not less than fifty nor more than one thousand dollars, or imprisonment in jail not less than one month nor more than two years, or by both such fine and imprisonment." Under this statute (§ 6) a simple assault and battery becomes aggravated (1) when com-

---

4 The Supreme Court said in Dominion Hotel, Inc. v. Arizona, 249 U.S. 265, 268, 39 S.Ct. 273, 274, 63 L.Ed. 597, that "The Fourteenth Amendment is not a pedagogical requirement of the impracticable", and if this is true of the Fourteenth it must be even more true of the due process clause of the Fifth. Truax v. Corrigan, 257 U.S. 312, 331 et seq., 42 S.Ct. 124, 66 L.Ed. 254, 27 A.L.R. 375.

mitted upon an officer in the lawful discharge of his duties, (2) when committed in a court of justice, place of religious worship, or place where persons are assembled for innocent amusement, (3) when committed in the house of a private family, (4) when committed by one in robust health upon one who is aged and decrepit, (5) when committed by an adult male upon a female or child or by an adult female upon a child, (6) when the instrument used inflicts disgrace upon the person assaulted, (7) when serious bodily injury is inflicted, (8) when committed with a deadly weapon, (9) when committed with premeditated design and by the use of means calculated to inflict great bodily injury, and (10) when committed by a person in disguise.

It does not appear under which of these paragraphs the appellant was charged and convicted in the insular district court, but this is immaterial because to sustain the conviction in that court there must have been an actual battery of one of the kinds described in the Puerto Rican Act as well as an assault, and in Puerto Rico such a battery is punishable by imprisonment for more than one year. That is to say, the 1922 conviction in Puerto Rico shows that the appellant must have committed an assault with a battery of some one of the ten types enumerated above, which battery is punishable by imprisonment for more than one year, and so the conviction was not only for an assault with intention to commit, but also with the actual commission of a crime of violence as defined in the last clause of § 1(6) of the Federal Firearms Act.

The appellant further contends that the evidence is fatally defective in that it does not appear that the ammunition which he was charged with having received and transported on August 27, three days before the affair at Annadale's Beach Club, was of the type defined in the Act.[5]

 The evidence is that on August 27 the appellant sent a friend into a hardware store to get him ten rounds of ammunition; that the friend entered the store, asked for ten rounds of ammunition for the appellant giving the storekeeper the appellant's nickname; that the appellant was well known in the store and that it was commonly known that he customarily carried a .38 caliber revolver; and that the friend brought ten rounds of ammunition out of the store and gave it to the appellant who carried it away. While this evidence is not as complete and definite as it might be, it seems to us sufficient, in view of the lack of evidence that the appellant had any other arm than the .38 caliber revolver, to warrant the inference that beyond a reasonable doubt the ammunition given to and carried away by appellant on the day charged in the indictment was for the .38 caliber revolver and therefore was "ammunition" as that term is defined in the Act.

The appellant's other contentions with respect to the insufficiency of the evidence have either been covered by what has already been said or else are too tenuous to require discussion.

 The appellant's exceptions to rulings of the court below on matters of procedure remain to be considered. He complains that he was not allowed to inquire of prospective jurors as to whether or not they had such weighty matters of business upon their minds that they could not concentrate on the trial about to be held before them; that he was not allowed unlimited time for oral argument but was given only twenty minutes; that he was not given continuances with respect to arguments on his demurrer and on certain motions; and that he was not allowed to introduce evidence of lack of prosecution by the insular authorities for the affair at the beach club. The most that can be said is that the foregoing are all matters within the discretion of the court below and it suffices for us to say that a careful consideration of the record discloses no abuse of discretion by that court. His other exceptions not noted above have been considered but are too frivolous even to require statement.

The judgment of the District Court is affirmed.

---

[5] The Act, (§ 1 (8) reads: "The term 'ammunition' shall include all pistol or revolver ammunition except .22-caliber rim-fire ammunition."