Ronald Dean SWARTZ, Petitioner,

v.

John MATHES, Warden, Respondent.

No. C00–2065–LRR.

United States District Court,
N.D. Iowa,
Eastern–Waterloo Division.

Nov. 12, 2003.

Ronald Dean Swartz, pro se, Waterloo, IA, for Petitioner.

Philip B. Mears, Mears Law Office, Iowa City, IA, for Petitioner.

Robert P. Ewald, Des Moines, IA, for Respondent.

## MEMORANDUM OPINION AND ORDER REGARDING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

READE, District Judge.

### I. INTRODUCTION

The petitioner, Ronald Dean Swartz ("Swartz"), filed the instant action pursuant to 28 U.S.C. § 2254. This matter comes before the court pursuant to the August 30, 2002 report and recommendation of United States Chief Magistrate Judge John A. Jarvey ("Judge Jarvey"). After extensive analysis, Judge Jarvey recommended Swartz's petition be denied.

On October 30, 2002, Swartz filed objections to Judge Jarvey's report and recommendation. Therefore, the court must undertake a review of Judge Jarvey's report and recommendation in light of Swartz's objections.

### II. DISCUSSION

#### A. Standard of Review

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [magistrate judge].

28 U.S.C. § 636(b)(1)(C). *See also* Fed. R.Civ.P. 72(b) (provides for review of a magistrate judge's recommendation on dis-

positive motions and prisoner petitions). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a de novo review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.1996) (citing 28 U.S.C. § 636(b)(1)); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir.1995) (same). However, the plain language of the statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). Therefore, portions of the proposed findings or recommendations to which no objections were filed are reviewed only for "plain error." *See Griffini v. Mitchell,* 31 F.3d 690, 692 (8th Cir.1994) (reviewing factual findings for "plain error" where no objections to the magistrate judge's report were filed).

## B. Objections

The court notes neither party resisted or filed objections to Judge Jarvey's conclusions regarding the bill of attainder claim and due process claim. Finding no objections to, and no plain error in, his conclusions, the court shall accept the portions of Judge Jarvey's report and recommendation pertaining to them. Swartz objects to Judge Jarvey's recommendation that the habeas corpus petition be denied because no violation of the ex post facto clause occurred and because the entrapment by estoppel claim had not been fairly presented to the state courts. The court now turns to consider those objections.

## 1. Background

The parties do not dispute Judge Jarvey's summary of the relevant facts surrounding this case. For convenience purposes, the court restates those facts:

[Swartz] was convicted of felony breaking and entering on June 23, 1976. Iowa Code [§ ] 724.26 and [Iowa Code § ] 724.27 [1] make it illegal for individuals convicted of a felony to possess a firearm, but these laws ... became effective on January 1, 1978. In 1981, [Swartz's] rights of citizenship were restored by then Governor Ray. The 1981 restoration of rights [form] did not contain any language regarding the prohibition of firearm possession by a felon. The form indicated that the restoration was not the equivalent of a pardon but did not specifically address the possession of firearm issue.

[Swartz] was convicted of [first] degree robbery in 1985. [Swartz's] robbery conviction was reversed on appeal of his post conviction relief proceedings. [Swartz] was retried again and found guilty, but that conviction was also reversed. In 1992, after he had served his sentence, [Swartz's] civil rights were re-

---

1. Both Iowa Code § 724.26 and Iowa Code § 724.27 were utilized to convict Swartz. Iowa Code § 724.26 provides:

   A person who is convicted of a felony in a state or federal court, or who is adjudicated delinquent on the basis of conduct that would constitute a felony if committed by an adult, and who knowingly has under the person's dominion and control or possession, receives, or transports or causes to be transported a firearm or offensive weapon is guilty of a class 'D' felony.

Iowa Code § 724.27 provides, in relevant part:

   [§ ] 724.26 shall not apply to a person who is eligible to have the person's civil rights regarding firearms restored under [§ ] 914.7 and who is pardoned or has had the person's civil rights restored by the President of the United States or the chief executive of a state and who is expressly authorized by the President of the United States or such chief executive to receive, transport, or possess firearms or destructive devices.

stored by then Governor Branstad.... The 1992 restoration of rights form contained language that expressly prohibited the possession of firearms by those previously convicted of a felony. In 1998, [Swartz] was ... convicted of possession of a firearm by a felon based on his 1976 breaking and entering conviction.

## 2. Ex Post Facto Clause

28 U.S.C. § 2254(d) provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, "[28 U.S.C. § ] 2254(d) distinguishes between two types of erroneous decisions-those of law and those of fact-and treats each in separate subparagraphs." *Weaver v. Bowersox*, 241 F.3d 1024, 1029 (8th Cir. 2001). Claims of legal error are governed by the former while claims of factual error fall within the latter. *Id.* at 1029-30. Swartz seeks relief under the former-28 U.S.C. § 2254(d)(1). He argues the Iowa courts' decisions on the issue of whether a violation of the ex post facto clause occurred were contrary to, or involved an unreasonable application of, clearly established federal law.

Under 28 U.S.C. § 2254(d)(1), a state prisoner may obtain federal habeas corpus relief with respect to a claim adjudicated on the merits in state court only through a showing that the state court's decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. The Supreme Court's recent opinion in *Williams v. Taylor ("Williams")*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), explains the meaning of those statutory concepts and the degree of deference that must be afforded to state court determinations on the merits in federal habeas corpus proceedings concerning state prisoners under the Antiterrorism and Effective Death Penalty Act. *See Newman v. Hopkins*, 247 F.3d 848, 850-52 (8th Cir. 2001) (discussing effect of *Williams*).

Under *Williams*, a state-court decision can be "contrary to" Supreme Court precedent in two ways: (1) if the state court "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) if the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams*, 529 U.S. at 405, 120 S.Ct. 1495. Further, "the [statutory] phrase 'clearly established Federal law, as determined by the Supreme Court of the United States,' ... refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 412, 120 S.Ct. 1495.

An "unreasonable application" of Supreme Court precedent can also arise in two ways. The Supreme Court explained:

First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends

a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407, 120 S.Ct. 1495 (citing *Green v. French,* 143 F.3d 865, 869–70 (4th Cir. 1998)). Thus, where a state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established federal law.'" *Id.* Notably, however,

[u]nder [28 U.S.C.] § 2254(d)(1)'s 'unreasonable application' clause, . . . a federal habeas [corpus] court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 411, 120 S.Ct. 1495.

█ Applying these standards to the present case, the court's inquiry must be whether the Iowa courts reached a decision contrary to that reached by the Supreme Court on a question of law, or alternatively, whether the Iowa courts correctly identified the applicable principles of federal law but then unreasonably applied that law to the facts of Swartz's claim. *See, e.g., Newman,* 247 F.3d at 850–52 (discussing *Williams*); *Weaver,* 241 F.3d

at 1029–30 (same); *Closs v. Weber,* 238 F.3d 1018, 1020 (8th Cir.2001) (same); *Copeland v. Washington,* 232 F.3d 969, 973 (8th Cir.2000) (same).

█ The United States Constitution provides that: "No . . . ex post facto Law shall be passed." U.S. Const., art. I, § 9, cl. 3. The ex post facto clause prohibits the application of laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood* ("*Collins*"), 497 U.S. 37, 43, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). Accordingly, a statute will violate the ex post facto clause if it: (1) retroactively imposes a greater punishment for an act that was not punishable at the time the act was committed, *Weaver v. Graham* ("*Weaver*"), 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); or (2) retroactively imposes a greater punishment for an act that was not punishable at the time the act was committed, *California Dep't of Corrections v. Morales* ("*Morales*"), 514 U.S. 499, 507 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995). *See also Cox v. Hart,* 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332 (1922) (stating a statute "is not made retroactive merely because it draws upon antecedent facts for its operation"). Essentially, the guiding question in evaluating the constitutionality of the Iowa Code, as applied to Swartz, is "whether the law changes the legal consequences of acts completed before its effective date." *Weaver,* 450 U.S. at 31, 101 S.Ct. 960.[2]

2. Although the Iowa courts assessed Swartz's conviction based on Iowa Code § 724.26 and Iowa Code § 724.27, several federal statutes are applicable to the court's discussion of the ex post facto claim. Title 18 U.S.C. § 921(a)(20), in relevant part, provides:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or

has had civil rights restored shall not be considered a conviction for the purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Title 18 U.S.C. § 922(g)(1)-(9), in relevant part, provides:

It shall be unlawful for any person—
(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . or (9)

To support his argument that a violation of the ex post facto clause occurred when the state court used his 1976 breaking and entering conviction to obtain the 1998 felon in possession of a firearm conviction, Swartz relied on authority from the Eighth Circuit Court of Appeals. *See United States v. Davis* (*"Davis"*), 936 F.2d 352, 356–57 (8th Cir.1991) (holding the ex post facto clause required Minnesota to apply the law in effect at the time of conviction (which restored the right to possess firearms upon discharge) rather than the law in effect at the time of discharge (which imposed a ten-year waiting period) when determining whether the defendant could possess firearms upon his discharge). *See also Bell v. United States* (*"Bell"*), 970 F.2d 428, 430–31 (8th Cir.1992) (holding previous convictions can only be used for sentence enhancement purposes under 18 U.S.C. § 924(e)(1) if the restoration of civil rights regarding such convictions expressly prohibited the possession of firearms) (discussing *Davis* and 18 U.S.C. § 921(a)(20) in conjunction with 18 U.S.C. § 922(g)(1)). Swartz also relied on Supreme Court precedent and asked the court to extend one of its legal principles to a new context. *See Weaver*, 450 U.S. at 24, 101 S.Ct. 960 (holding law, which decreased the amount of gain-time credits awarded for an inmate's good behavior, violated the ex post facto clause because the application of such law changed the legal consequences for a crime committed before the law took effect).

In response, the respondent cited a Fourth Circuit Court of Appeals case for the proposition that the application of a statute prohibiting felons from possessing firearms does not violate the ex post facto clause because it is a protective measure and does not impose any new or different punishment. *See United States v. O'Neal* (*"O'Neal"*), 180 F.3d 115, 124–25 (4th Cir. 1999) (holding North Carolina Felony Firearms Act did not violate the ex post facto clause because it was a "measured public safety provision" and its applicability to previously convicted felons was "eminently reasonable") (criticizing *Davis*). Additionally, the respondent briefly discussed Swartz's reliance on *Weaver* and pointed out such reliance assumes that prohibiting a felon from possessing a firearm constitutes additional punishment. *Cf. Morales*, 514 U.S. at 504–08, 115 S.Ct. 1597 (distinguishing *Weaver*) (shifting focus from whether the legislative change "produces some sort of ambiguous 'disadvantage'" to whether the legislative change "alters [the] definition of criminal conduct or increases the penalty by which a crime is punishable").

In his report and recommendation, Judge Jarvey thoroughly discussed *Davis*, *Bell* and *O'Neal*. Although he acknowledged *Davis* represents contrary authority, Judge Jarvey noted a majority of courts "hold a conviction under a statute forbidding possession of a firearm by a person convicted of a felony does not violate the [e]x [p]ost [f]acto [c]lause even when the felony for which the defendant was convicted took place before the statute was enacted." *See United States v. Brady*, 26 F.3d 282, 291 (2d Cir.1994) (holding the use of a 1951 felony conviction as a predicate for a violation of 18 U.S.C. § 922(g)(1) did not violate the ex post facto clause because the crime of being a felon in possession of a firearm was not committed until after the effective date of the statute under which he was convicted);

who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting com-

merce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

*United States v. Huss*, 7 F.3d 1444, 1447 (9th Cir.1993), *overruled on other grounds by United States v. Sanchez–Rodriguez*, 161 F.3d 556, 563 (9th Cir.1998), (concluding no ex post facto problem because Oregon weapons restriction does not impose punishment for prior crimes, but rather furthers the substantial and legitimate safety interest in preventing the misuse of firearms) (declining to follow *Davis* or *Roehl v. United States*, 977 F.2d 375 (7th Cir.1992) and finding persuasive *Cases v. United States*, 131 F.2d 916 (1st Cir.1942)); *Roehl*, 977 F.2d at 377–78 (stating 1966 conviction and 1974 conviction could be used as predicates for conviction under 18 U.S.C. § 922(g) and for enhancement under 18 U.S.C. 924(e) because each could be a predicate for criminal liability under Wis. Stat. 941.29, which makes it illegal for a convicted felon to possess a gun) (rejecting the defendant's ex post facto argument because, if prosecuted for violating Wis. Stat. 941.29, his earlier felony convictions could have been predicates without violating the ex post facto clause); *United States v. Matassini*, 565 F.2d 1297, 1307 (5th Cir.1978) (interpreting 18 U.S.C. § 1202(a)(1), the predecessor to 18 U.S.C. § 922(g)) (determining Congress intended statutes prohibiting felons from possessing firearms to reach "persons convicted of felonies prior to [the effective date of the statute]"); *Cases v. United States*, 131 F.2d 916, 921 (1st Cir.1942) (finding, if a statute "is a bona fide regulation of conduct which the legislature has power to regulate, it is not bad as an ex post facto law even though the right to engage in the conduct is made to depend on past behaviour, even behaviour before the passage of the regulatory act"). *See also United States v. Etheridge*, 932 F.2d 318, 321–23

(4th Cir.1991) (assuming no violation of the ex post facto clause regarding the defendant's conviction under 18 U.S.C. § 922(g)(1)) (concluding no violation of the ex post facto clause when the district court enhanced the defendant's sentence under 18 U.S.C. § 924(e)(1) because the temporal focus is the date of the present offense, not the date of the prior felony convictions); *United States v. Jordan*, 870 F.2d 1310, 1314–15 (7th Cir.1989) (discussing 18 U.S.C. § 1202(a)(1), the predecessor to 18 U.S.C. § 922(g), and the enhancement provision added to 18 U.S.C. § 1202(a)(1), the predecessor to 18 U.S.C. § 924) (stating the defendant is being punished because he violated 18 U.S.C. § 1202(a)(1)) (holding n@o violation of ex post facto clause because enhancement provision "increases the punishment for [being a felon in possession of a firearm that traveled in or affected interstate commerce]" and "[i]t does not affect the punishment previously meted out to [the defendant] for the ... [crimes] he committed prior to the effective date of the [statute]"); *United States v. Patterson*, 820 F.2d 1524, 1527 (9th Cir. 1987) (holding no ex post facto violation because enhancement provision was already on the books when the defendant committed the 1985 firearm offense). *Cf. United States v. Baca–Valenzuela*, 118 F.3d 1223, 1231 (8th Cir.1997) ("Because [it] is merely a sentence enhancement provision ...[,] it plainly is not an ex post facto law.") (citing *United States v. Farmer*, 73 F.3d 836, 841 (8th Cir.1996)) (distinguishing *Davis*).[3]

Apart from cases applying 18 U.S.C. § 922(g)(1) to convicted felons, Judge Jarvey relied on several cases which analyzed ex post facto challenges to 18 U.S.C.

---

**3.** Regarding Swartz's ex post facto argument, the Iowa Supreme Court relied on *Baca–Valenzuela*, 118 F.3d at 1231, *Brady*, 26 F.3d at 291, *Etheridge*, 932 F.2d at 323, *Patterson*, 820 F.2d at 1527, *State v. Pickens*, 558

N.W.2d 396, 397 (Iowa 1997) and *State v. Hall*, 301 N.W.2d 729, 732–33 (Iowa 1981). *See State v. Swartz*, 601 N.W.2d 348, 350–51 (Iowa 1999). The Iowa Supreme Court also distinguished *Davis*. *Id.*

§ 922(g)(9), the provision prohibiting individuals convicted of domestic abuse from possessing firearms. *See United States v. Mitchell ("Mitchell")*, 209 F.3d 319, 322–23 (4th Cir.2000) ("It is immaterial that [the defendant's] firearm purchase and domestic violence conviction occurred prior to [18 U.S.C.] § 922(g)(9)'s enactment because the conduct prohibited by [18 U.S.C.] § 922(g)(9) is the possession of a firearm . . . . [Thus,] the application of [18 U.S.C.] § 922(g)(9) to [the defendant] does not run afoul of the ex post facto prohibition."); *United States v. Boyd*, 52 F.Supp.2d 1233, 1236–37 (D.Kan.1999), *aff'd* 211 F.3d 1279 (10th Cir.2000), (concluding the illegal act was not completed until after 18 U.S.C. § 922(g)(9) became effective because the illegal act in 18 U.S.C. § 922(g)(9) is the possession of the firearm, not the misdemeanor domestic violence conviction); *United States v. Meade*, 986 F.Supp. 66, 69 (D.Mass.1997), *aff'd* 175 F.3d 215 (1st Cir.1999), (holding 18 U.S.C. § 922(g)(9) penalizes the possession of a firearm after its effective date and, therefore, does not constitute a violation of the ex post facto clause); *NAGE, Inc. v. Barrett*, 968 F.Supp. 1564, 1575–76 (N.D.Ga.1997), *aff'd* 155 F.3d 1276 (11th Cir.1998), (concluding 18 U.S.C. § 922(g)(9) does not criminalize conduct that occurred prior to its effective date). *See also United States v. Hemmings*, 258 F.3d 587, 594 (7th Cir.2001) (stating 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 922(g)(9) are not ex post facto laws) (citing *Brady* and *Mitchell*); *United States v. Beavers*, 206 F.3d 706, 708–09 (6th Cir. 2000) (concluding a conviction on a domestic violence offense sufficiently placed the defendant on notice that the government might regulate his ability to own or possess a firearm).

Summarizing the Iowa Supreme Court's resolution of the ex post facto issue, Judge Jarvey stated:

[Iowa Code § 724.26 and Iowa Code § 724.27] do not violate the [e]x [p]ost [f]acto [c]lause because [Swartz] is not being additionally punished for his earlier felony, but rather, for a new and separate offense of which the prior felony conviction is an element.

And, prior to recommending Swartz's petition for habeas corpus relief be denied, Judge Jarvey concluded that is was clear the Iowa Supreme Court relied on the majority view when resolving the federal issues presented.

When objecting to Judge Jarvey's report and recommendation, Swartz asks the court to consider the Supreme Court's decision in *Weaver*. In *Weaver*, the Supreme Court considered whether a Florida statute which altered the availability of "gain time credit for good conduct" was unconstitutional as an ex post facto law when applied to a defendant whose crime was committed before the statute's enactment. *Weaver*, 450 U.S. at 25, 101 S.Ct. 960. When resolving whether the Florida statute was unconstitutional, the Supreme Court examined two factors: (1) was the law retrospective, that is, did it change the quantum of punishment for actions occurring before its enactment, and (2) was the law disadvantageous to the offender affected by it, that is, was it more onerous that the law in effect on the date of the offender's crime. *Id.* at 29–33, 101 S.Ct. 960. The Supreme Court determined the Florida statute "substantially altered the consequences attached to a crime already completed," changing the quantum of punishment, and, therefore, could be constitutionally applied to offenders who committed crimes prior to its effective date if it did not have a more onerous effect. *Id.* at 31–33, 101 S.Ct. 960. Finding the reduction in good time credits disadvantaged prisoners by lengthening the time they spent in prison, the Supreme Court concluded the Florida statute violated the ex

post facto clause when applied to prisoners whose crime was committed before its enactment. *Id.* at 33–36, 101 S.Ct. 960. Based on *Weaver*, Swartz contends the decision of the Iowa Supreme Court is an unreasonable application of clearly established federal law as determined by the Supreme Court or, alternatively, the Iowa Supreme Court unreasonably refused to extend a legal principle from the Supreme Court to a new context where is should apply. *See Williams*, 529 U.S. at 407, 120 S.Ct. 1495.

Factually, *Weaver* is distinguishable because it addresses the affect of a new statute on a sentence being served. It does not address a conviction which is based on prior conduct. Further, the Supreme Court subsequently reexamined its opinion in *Weaver*. *See Morales*, 514 U.S. at 504–08, 115 S.Ct. 1597. In *Morales*, the Supreme Court observed that the language in the *Weaver* opinion was inconsistent with its decision in *Collins* and, most important, that it was unnecessary to the outcome of the case. *Id.* at 507 n. 3, 115 S.Ct. 1597. Clarifying its precedent, the Supreme Court stated an ex post facto violation does not rest on an inmate's lost opportunity to reduce prison time but, rather, only upon a finding that legislation retroactively modified the definition of or increased the penalty for an inmate's crime:

> After *Collins*, the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor ... on whether an amendment affects a prisoner's 'opportunity to take advantage of provisions for early release,' but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

*Id. See also id.* at 514, 115 S.Ct. 1597 (holding the application of change in law regarding the time-table for being eligible for parole board hearings was not an increase in punishment violative of the ex post facto clause). Moreover, the Supreme Court has never addressed in any of its cases, including *Weaver*, the question of whether prohibiting a felon from possessing a firearm constitutes additional punishment; based on Supreme Court precedent, there is no single bright-line test for what constitutes punishment. Thus, Swartz's reliance on *Weaver* is unavailing.

■ In light of the majority view regarding the ex post facto challenges to state laws barring previously convicted felons from possessing firearms, the ex post facto challenges to 18 U.S.C. § 922(g)(1) and the analogous ex post facto challenges to 18 U.S.C. § 922(g)(9), the court believes the Iowa Supreme Court applied the appropriate legal standard in this case. Because it cannot say the Iowa Supreme Court's decision was an unreasonable application of any clearly established legal principle as determined by the Supreme Court, the court rejects Swartz's objection regarding Judge Jarvey's conclusion that no violation of the ex post facto clause occurred, and the court accepts the pertinent portions of Judge Jarvey's report and recommendation regarding this conclusion.

### 3. Mistake of Law/Entrapment by Estoppel

At trial, Swartz tried to present a mistake of law defense and to admit into evidence the 1981 restoration of rights form signed by then Governor Ray. Based on the fact that knowledge is not an element for an offense under Iowa Code § 724.26, the trial court determined the mistake of law defense was unavailable to Swartz and did not admit the 1981 restoration of rights form into evidence. After defense counsel argued its mistake of law theory to the jury and implied the state

had to prove intent, the trial court permitted the state to refer on rebuttal to the fact that the trial court never admitted a restoration of civil rights form into evidence.

On appeal, Swartz argued the trial court erred when it denied his mistake of law defense. In his appeal brief, Swartz relied on Iowa case law and Iowa Code § 701.6 to support his mistake of law argument. He did not cite the United States Constitution or any federal law. In response, the state argued Iowa law. Although it did cite two federal cases, neither of them discussed the concept of entrapment by estoppel. In his reply brief, Swartz cited a federal case which discussed entrapment by estoppel. When alleging the state trial court erred in refusing to allow the mistake of law defense, Swartz stated:

> In [*Saadiq v. State*, 387 N.W.2d 315 (Iowa 1986) ], the [Iowa] Supreme Court held that knowledge of whether you are a felon is not an element of the offense or, in other words, the fact that one does not know he or she is a former felon is not a defense to [an offense under Iowa Code § 724.26]. [Swartz's] claim is different. [Swartz] knew he was a former felon, however, he had been led to believe that all of his civil rights, including the right to possess a firearm, had been restored. He was acting in conformity with the restoration [form] and relying upon it in voting, running for public office and possessing a firearm. This is entrapment by estoppel or mistake of law. Entrapment by estoppel, or the mistake of law defense, occurs when a person is informed by a government official that his conduct is in conformity with the law, [and the person] justifiably relies upon the information. *United States v. Austin*, 915 F.2d 363, 366 (8th Cir.1990) *cert. denied* 499 U.S. 977, 111 S.Ct. 1626, 113 L.Ed.2d 722 (1991). Consequently, [Swartz's] situation falls within the distinction made by the Iowa

Supreme Court in *Saadiq* between lack of knowledge and affirmative misinformation. . . .

Swartz's reply brief did not characterize his "entrapment by estoppel" theory as presenting a federal constitutional claim, that is, he did not suggest his mistake of law or entrapment by estoppel defense stems from the due process clause.

When considering Swartz's argument that the trial court erred in refusing to instruct the jury with respect to a mistake of law defense, the Iowa Supreme Court addressed such argument as a state-law question. It did not mention the "entrapment by estoppel" theory or cite any federal law regarding such theory. *See Swartz*, 601 N.W.2d at 352 (discussing effect of Iowa Code § 724.27 and Iowa Code § 701.6 where state attempts to obtain a conviction under Iowa Code § 724.26) (relying on *Saadiq*, 387 N.W.2d at 323 and *State v. Hall*, 301 N.W.2d 729, 732 (Iowa 1981)) (concluding trial court properly refused to instruct on mistake of law when presenting the case to the jury).

In support of his request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, Swartz argued his mistake of law defense included a constitutional component. More specifically, Swartz contends his mistake of law defense can be construed as a constitutional entrapment by estoppel defense. Regarding his entrapment by estoppel claim, Swartz states the 1981 restoration of rights form signed by then Governor Ray restored all of his rights, including his right to possess firearms. In his report and recommendation, Judge Jarvey stated:

> There is no indication [the entrapment by estoppel] argument was presented as a federal question in the state court. This argument was framed as a 'mistake of law' argument before the Iowa Supreme Court. There, the petitioner sim-

ply argued that he was deprived of a state substantive law defense pursuant to Iowa Code § 701.6. No constitutional issue was presented and no federal cases were cited in support of this argument. Relying on 28 U.S.C. § 2254(b)(1), Judge Jarvey concluded Swartz did not adequately present his entrapment by estoppel argument to the Iowa Supreme Court. In his objections to Judge Jarvey's report and recommendation regarding this argument, Swartz claims the entrapment by estoppel reference and the citation to a federal case in his appeal brief should have been enough to alert the Iowa Supreme Court regarding his federal claim.

■■■ Before a petitioner may obtain federal habeas corpus review of his state confinement, he must first "exhaust" his federal claims in the appropriate state forum. 28 U.S.C. § 2254(b)(1).[4] A petitioner has exhausted his state remedies when he has provided the highest state court with a full and fair opportunity to consider all the claims before presenting them to the federal court. *Vasquez v. Hillery*, 474 U.S. 254, 257, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Miller v. Lock*, 108 F.3d 868, 871 (8th Cir.1997); *Ashker v. Leapley*, 5 F.3d 1178, 1179 (8th Cir.1993); *McDougald v. Lockhart*, 942 F.2d 508, 510 (8th Cir.1991). *See also* 28 U.S.C. § 2254(c).[5] In Iowa, exhaustion requires a petitioner to seek discretionary

review from the Iowa Supreme Court after the Iowa Court of Appeals rejects an appeal argument. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (abrogating *Dolny v. Erickson*, 32 F.3d 381 (8th Cir.1994)).

■■■ The fair presentment component of the exhaustion requirement compels a petitioner to affirmatively:

> refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.

*Ashker*, 5 F.3d at 1179 (quotations and citations omitted). *Accord Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir.1980). A claim is not fairly presented to the state courts unless the same factual grounds and legal theories asserted in the prisoner's federal habeas corpus petition have been properly raised in the prisoner's state court proceedings. *Keithley v. Hopkins*, 43 F.3d 1216, 1217 (8th Cir.1995); *Flieger v. Delo*, 16 F.3d 878, 884 (8th Cir.1994). *See also Duncan v. Henry*, 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) ("If state courts are to be given the opportunity to correct alleged violations of prisoner's federal rights, they must surely be alerted to the fact the prisoners are asserting claims under the United States Constitution.... mere similarity of claims is insufficient to exhaust remedies."); *Keeney v. Tamayo–Reyes*, 504 U.S. 1, 8, 112 S.Ct. 1715, 118 L.Ed.2d

4. 28 U.S.C. § 2254(b)(1) provides:

   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-
   (A) the applicant has exhausted the remedies available in the courts of the State, or
   (B) (i) there is an absence of available State corrective process; or

   (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

5. 28 U.S.C. § 2254(c) provides:
   An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

318 (1992) (full and fair presentment of claims to the state court requires "full factual development" of the claims in that forum); *Barrett v. Acevedo,* 169 F.3d 1155, 1162 (8th Cir.1999) ("Presenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement.").

■ "The purpose of the fair presentation component of the exhaustion requirement is to give state courts the first opportunity to review federal constitutional issues and to correct federal errors made by the state's trial courts." *Laws v. Armontrout,* 834 F.2d 1401, 1412 (8th Cir. 1987). *See also Duncan,* 513 U.S. at 365, 115 S.Ct. 887 (stating state courts must be given the opportunity to pass upon and correct alleged violations of prisoners' federal rights). If a petitioner has not fully presented his federal claims in state court, the claims are barred in federal court and must be dismissed, unless the petitioner can either show both good cause for his failure to present the claims in state court and actual prejudice as a result of the alleged constitutional violation or demonstrate that failure to review the claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Keithley,* 43 F.3d at 1218; *Maynard v. Lockhart,* 981 F.2d 981, 984 (8th Cir.1992); *Buckley v. Lockhart,* 892 F.2d 715, 718 (8th Cir.1989).

■ The court finds Swartz exhausted his mistake of law theory. Nevertheless, this does not assist Swartz because it is well settled that questions of state law are not subject to review pursuant to 28 U.S.C. § 2254. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Knox v. State,* 131 F.3d 1278, 1281 (8th Cir.1997); *Gee v. Groose,* 110 F.3d 1346, 1349 (8th Cir.1997). Regarding Swartz entrapment by estoppel theory, the court concludes Swartz failed to raise such

theory before the state courts. A review of the state court records reveals Swartz did not present his entrapment by estoppel claim as a constitutional issue. Because Swartz argued a state-based mistake of law claim and not a constitutional entrapment by estoppel claim before the state courts, he did not present his claims as he is required to do if he seeks habeas corpus relief. *See* 28 U.S.C. § 2254(b)(1)(A); *Carmichael v. White,* 163 F.3d 1044, 1045–46 (8th Cir.1998). Additionally, Swartz fails to show good cause for any failure to present his claims to the highest state court and actual prejudice as a result of the alleged constitutional violation or a potential for the fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750, 111 S.Ct. 2546; *Keithley,* 43 F.3d at 1218; *Maynard,* 981 F.2d at 984; *Buckley,* 892 F.2d at 718. Therefore, upon de novo review, the court rejects Swartz's contention that he exhausted his entrapment by estoppel claim, and his objection asserting the same is overruled.

## C. Certificate of Appealability

■ Swartz asks the court to grant a certificate of probable cause if both of his objections are overruled by the court. *See Harris v. Bowersox,* No. 97–1528, 184 F.3d 744 (8th Cir.1999) (explaining "certificate of probable cause" is the term used prior to the effective date of the Antiterrorism and Effective Death Penalty Act and "certificate of appealability" is the term used under the Antiterrorism and Effective Death Penalty Act). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Fed. R.App. P. 22(b). *See Tiedeman v. Benson,* 122 F.3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may only issue if a petitioner has made a substantial showing of the denial of a constitutional right. *See Miller–El v. Cockrell,* 537 U.S.

322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076–77 (8th Cir.2000); *Carter v. Hopkins*, 151 F.3d 872, 873–74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir.1997); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir.1994)). *See also Miller–El*, 123 S.Ct. at 1039 (reiterating standard).

Courts often reject constitutional claims on the merits or on procedural grounds. " '[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.' " *Miller–El*, 123 S.Ct. at 1040 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the prisoner's underlying constitutional claim, "the prisoner [must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484, 120 S.Ct. 1595.

Based on the record, the court finds a reasonable jurist could not conclude that the district court erred when concluding Swartz failed to exhaust his entrapment by estoppel claim or that Swartz should be allowed to proceed further. Because there is no debatable question as to the resolution of the entrapment by estoppel issue, an appeal is not warranted. With regard to the ex post facto claim, Swartz also fails to meet the standards set forth for the issuance of a certificate of appealability. Having thoroughly reviewed the record in this case, the court finds Swartz failed to make the requisite "substantial showing." *See* 28 U.S.C. § 2253(c)(2); Fed. R.App. P. 22(b).

Because he did not present questions of substance for appellate review, Swartz's request for a certificate of appealability is denied. If Swartz desires further review of his 28 U.S.C. § 2254 petition, he may request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520–22.

## III. CONCLUSION

In sum, the court finds Swartz is not entitled to relief pursuant to 28 U.S.C. § 2254. Accordingly, the court overrules Swartz's objections to Judge Jarvey's August 30, 2003 report and recommendation and accepts such report and recommendation in its entirety (Docket No. 31). The Clerk of Court is directed to enter judgment dismissing Swartz's 28 U.S.C. § 2254 petition. Swartz's request for a certificate of appealability is denied.

**IT IS SO ORDERED.**